UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN CHRISTIAN PARKS,

Defendant.

CR13-165 TSZ

ORDER

Prior to trial, the Court denied defendant's motion to dismiss the Armed Career Criminal Act ("ACCA") allegation, without prejudice, _see_ Minute Order (docket no. 75), because the motion was premature and presented a sentencing issue. At trial, defendant John Christian Parks was convicted of being a felon in possession of a firearm, and the Court must now decide whether Parks qualifies as an armed career criminal pursuant to 18 U.S.C. § 924(e). The Court, being fully advised, enters the following order.

**Background**

On March 30, 2013, Parks was arrested in the Mt. Baker-Snoqualmie National Forest, and he was subsequently charged with being a felon in possession of a firearm. On October 31, 2013, after a four-day trial, the jury found Parks guilty of Count 2 of the Indictment: Felon in Possession of Firearms. Verdict (docket no. 141).

Under the ACCA, a defendant who is found guilty of being a felon in possession of a firearm and who has three previous convictions for a violent felony and/or serious drug offense shall be imprisoned for a statutory minimum of fifteen years. 18 U.S.C. § 924(e)(1). The Government and Parks agree that Parks has two prior convictions for serious drug offenses.[1] Parks also has a prior conviction for Escape in the Second Degree, under King County Superior Court case number 04-1-12909-1, and the question before the Court is whether this conviction constitutes a third predicate under the ACCA.[2] If it does, then Parks would be deemed an armed career criminal and would be subject to the ACCA's sentencing enhancement provisions.

## Analysis

The Government contends that Escape in the Second Degree constitutes a violent felony for purposes of the ACCA. Parks argues to the contrary. The Court is persuaded that Parks is correct. The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C.

---

[1] The previous serious drug offenses are (1) Violation of the Uniform Controlled Substances Act – Manufacture, Deliver, Possession with Intent, under Pierce County Superior Court case number 01-1-06630-9, and (2) Violation of the Uniform Controlled Substances Act – Manufacture, Deliver, Possession with Intent, under Clallam County Superior Court case number 97-1-00284-1. *See* Gov't Resp. at 3 (docket no. 49); Reply at 1-2 (docket no. 67).

[2] Although Parks has a number of other convictions, the Government and Parks agree that the conviction for Escape in the Second Degree is the only other conviction that could be a predicate under the ACCA.

ORDER - 2

§ 924(e)(2)(B) (emphasis added).  As statutorily defined in Washington, the crime of Escape in the Second Degree does not involve as an element the use, attempted use, or threatened use of physical force against the person of another, _see_ RCW 9A.76.120, and thus, the offense does not constitute a violent felony under the first prong of the ACCA definition.  _See_ 18 U.S.C. § 924(e)(2)(B)(i).  Moreover, the crime of Escape in the Second Degree is not specifically enumerated as a "violent felony" under the second prong of the ACCA definition.  _See_ 18 U.S.C. § 924(e)(2)(B)(ii).  Therefore, the question presented is whether Escape in the Second Degree qualifies as a "violent felony" under the ACCA's "residual clause," which includes a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  _Id._; _see also_ _United States v. Spencer_, 724 F.3d 1133, 1137 (9th Cir. 2013).

In determining whether an offense qualifies as a violent felony under the ACCA's residual clause, courts apply the "categorical approach," unless the statute defining the crime is "divisible," setting forth multiple, alternative means of committing the offense. _Descamps v. United States_, 133 S. Ct. 2276, 2284-86 (2013).  In the latter circumstance, courts employ a "modified categorical approach," and may consider "extra-statutory" materials, for example, the charging document, written plea agreement, transcript of plea colloquy, and factual findings by the trial judge, in ascertaining which version of the offense gave rise to the conviction at issue.  _Id._; _see_ _Shepard v. United States_, 544 U.S. 13 (2005).

Under both approaches, whether as to the statute as a whole or only the portion of the statute defining the particular crime of conviction, to determine whether the offense

qualifies as a violent felony under the ACCA's residual clause, courts engage in two inquiries. First, courts analyze whether the conduct encompassed by the elements of the offense, in the ordinary case, necessarily present a serious potential risk of physical injury to another. _See_ _Spencer_, 724 F.3d at 1138. Second, courts assess whether the prior crime is "roughly similar, in kind as well as in degree of risk posed" to the offenses enumerated before the residual clause, namely burglary, arson, extortion, and use of explosives. _Id._ An offense must satisfy both inquiries to be deemed a "violent offense."

### A. Modified Categorical Approach

In this case, because Escape in the Second Degree may be accomplished in one of three alternative ways,[3] the Court must use the "modified categorical approach" and examine "extra-statutory" materials to determine which means Parks was found to have committed. In connection with his conviction for Escape in the Second Degree, Parks entered an _Alford_ plea and gave the judge hearing his plea permission to review the Certification for Determination of Probable Cause to find a factual basis for the plea. Plea at ¶ 11, Ex. 6 to Gov't Resp. (docket no. 49-2). This Court therefore reviews the same Certification as part of the "modified categorical approach."

According to the Certification for Determination of Probable Cause, around noon on June 15, 2004, Parks was being transported from the Regional Justice Center to the

---

[3] The three means of perpetrating Escape in the Second Degree are: (a) knowingly escaping from a detention facility; (b) knowingly escaping from custody after being charged with a felony; or (c) knowingly leaving or remaining absent from the State of Washington without prior court authorization after being committed under RCW Chapter 10.77 for a sex, violent, or felony harassment offense and while under an order of conditional release. RCW 9A.76.120(1). For purposes of the first alternative, a "detention facility" includes "any place used for the confinement of a person . . . arrested for, charged with or convicted of an offense." RCW 9A.76.010(3)(a).

City of Kent Correctional Facility. Upon arrival at the City of Kent Correctional Facility, while still in handcuffs, "Parks jumped from the rear of the transport van and ran away." Ex. 7 to Gov't Resp. (docket no. 49-2). The transport officer was unable to pursue Parks because he "had two other inmates to secure so he was unable to follow Parks as he fled." *Id.* Shortly after 4:45 p.m. on the same day, Parks was apprehended without incident. *Id.* Based on the Certification for Determination of Probable Cause, the Court concludes that Parks was convicted under the first alternative means identified in the statute defining Escape in the Second Degree, namely knowingly escaping from a detention facility. *See* RCW 9A.76.120(1)(a).

**B.    First Inquiry:  Serious Potential Risk of Injury**

Washington courts have broadly interpreted this first method of committing Escape in the Second Degree to include failure to return to jail from temporary leave granted after a plea but before sentencing, *State v. Law*, 110 Wn. App. 36, 38 P.3d 374 (2002), and failure to return to jail from work release or medical furlough, *State v. Kent*, 62 Wn. App. 458, 814 P.2d 1195 (1991). Under Washington law, to be guilty of escape, one need not run or flee from custody; rather, "one need only be where he or she is not supposed to be or fail to be where he or she is supposed to be." *Kent*, 62 Wn. App. at 461.

Given this expansive reading of RCW 9A.76.120(1)(a), the Court concludes, under the first requisite inquiry, that the conduct encompassed by the elements of escape from a detention facility do not, in the ordinary case, present a serious potential risk of

physical injury to another.  Such result is consistent with *Chambers v. United States*, 555

U.S. 122 (2009), and *United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006).

In *Chambers*, the Supreme Court analyzed an Illinois statute that described seven

different behaviors constituting escape; the first two subsections involved escape from a

penal institution or the custody of an employee of a penal institution, while the next four

provisions identified different forms of failing to report or return to custody, and the last

part of the statute dealt with failing to abide by the terms of home confinement.  555 U.S.

at 126.  The *Chambers* Court concluded that the middle four statutory provisions defined

a separate crime, namely failure to report, that is different in nature from escape, and that

does not involve conduct presenting a serious potential risk of physical injury to another.

*Id.* at 126-29.  The *Chambers* Court reasoned that failing to report is a "form of inaction,"

which is "a far cry from the 'purposeful, 'violent,' and 'aggressive' conduct' potentially

at issue when an offender uses explosives against property, commits arson, burgles a

dwelling or residence, or engages in certain forms of extortion."  *Id.* at 128.  Relying on a

United States Sentencing Commission report, the *Chambers* Court held that an offender

who failed to report is not "significantly more likely than others to attack, or physically to

resist, an apprehender," and that the crime of failure to report is not a violent felony for

purposes of the ACCA.  *Id.* at 129-30.

In *Piccolo*, the Ninth Circuit had occasion to analyze whether a conviction for

escape pursuant to 18 U.S.C. § 751(a) could be treated as a predicate under United States

Sentencing Guidelines ("U.S.S.G.") § 4B1.1, which defines "career offender" and

incorporates a definition that is analogous to the ACCA's "violent felony" residual

clause. _See_ U.S.S.G. § 4B1.2(a)(2). Section 751(a) criminalizes escape or attempted

escape "from the custody of the Attorney General or his authorized representative, or

from any institution or facility in which [a person] is confined" if the custody or

confinement "is by virtue of an arrest on a charge of felony, or conviction of any

offense." 18 U.S.C. § 751(a). In _Piccolo_, the defendant was permitted to leave a non-

secure halfway house to attend a drug treatment meeting and did not return; he was

subsequently convicted under § 751(a). 441 F.3d at 1085. The _Piccolo_ Court observed

that § 751(a) does not differentiate between violent and non-violent escapes. _Id._ at 1088

("the statutory definition of the crime runs the gamut from maximum-security facilities to

non-secure halfway houses"). The _Piccolo_ Court characterized the defendant's prior

crime as a "walk-away escape" that involved no violence or potential for violence, and

therefore held that "convictions under § 751(a) sweep too broadly to qualify as a crime of

violence" for purposes of U.S.S.C. § 4B1.1. _Id._ at 1090.

Similarly, the range of behavior considered by Washington courts to constitute

escape from a detention facility under RCW 9A.76.120(1)(a) is too expansive to support

a conclusion that such crime, in the ordinary case, presents a serious potential risk of

physical injury to another.[4] _See also_ _United States v. Flores-Cordero_, 723 F.3d 1085 (9th

Cir. 2013) (holding that resisting arrest under Arizona law, which contains as an element

---

[4] _United States v. Savage_, 488 F.3d 1232 (9th Cir. 2007), which held, under the "modified categorical approach" that escape under Montana law constituted a crime of violence was decided prior to _Descamps_, in which the Supreme Court clarified that the "modified categorical approach" may not be applied to a single offense that has an indivisible set of elements. Thus, the precedential effect of _Savage_ is in serious doubt, and the Court has not relied on that opinion in reaching its decision.

the use or threatened use of physical force against a peace officer or another, does not

categorically constitute a crime of violence because the amount of force sufficient to

commit the crime is minimal, as opposed to level of force required to constitute a "violent

felony," namely force that is capable of causing physical pain or injury to another person

(citing *Johnson v. United States*, 559 U.S. 133, 140 (2010))). Thus, the Court concludes

that the first alternative means of committing Escape in the Second Degree does not,

under the ACCA's residual clause, constitute a "violent felony."

### C. Second Inquiry: Similarity to Enumerated Offenses

Even if the Court were to hold that, in the ordinary case, escape from a detention

facility, as defined by Washington courts, presented a serious potential risk of physical

injury to another, the Court would nevertheless conclude that such crime does not involve

a risk similar in kind, as well as degree, to the risk associated with the offenses

enumerated in the ACCA's definition of "violent felony," namely burglary, arson,

extortion, and use of explosives. *See Spencer*, 724 F.3d at 1138; *see also Sykes v. United

States*, 131 S. Ct. 2267, 2277 (2011). Burglary is dangerous because "it can end in

confrontation leading to violence." *Spencer*, 724 F.3d at 1143 (quoting *Sykes*, 131 S. Ct.

at 2273). Arson is deemed a "violent felony" because it involves the "intentional release

of a destructive force dangerous to others." *Id.* at 1141 (quoting *Sykes*, 131 S. Ct. at

2273). The same can be said for the use of explosives.

In contrast, Parks's conduct presented neither the same kind nor similar degree of

risk. When he jumped from the transport van, Parks's hands were cuffed behind his

back. Parks traveled on foot little more than 500 feet from the City of Kent Correctional

Facility before being apprehended roughly five hours later. He was cooperative and taken into custody without incident. This offense did not involve the type of provocative and dangerous act or indifference to collateral consequences that characterizes the crimes enumerated in the ACCA or the Indiana offense deemed in _Sykes_ to be a "violent felony," namely fleeing a law enforcement officer via vehicle. Thus, the requisite second inquiry leads to the same result -- Parks's conviction for Escape in the Second Degree does not constitute a "violent felony" for purposes of the ACCA.[5]

**Conclusion**

For the foregoing reasons, the Court HOLDS that Parks does not have the requisite three prior convictions for a violent felony and/or serious drug offense, and that Parks is not subject to the statutory minimum of fifteen years imprisonment under the ACCA.

IT IS SO ORDERED.

Dated this 7th day of January, 2014.

THOMAS S. ZILLY
United States District Judge

---

[5] Although not a factor recognized as part of the "categorical approach," the fact that the Washington Legislature itself, in its sentencing laws, does not consider Escape in the Second Degree to be a "violent offense" is noteworthy. _See_ RCW 9.94A.030(54).

ORDER - 9